Gregory HURT, Appellant,

v.

UNITED STATES, Appellee.

No. 7280.

District of Columbia Court of Appeals.

Argued Oct. 10, 1973.

Decided Jan. 28, 1974.

C. Floyd Mathews, Washington, D. C., appointed by this court, with whom Robert L. McCarty, Washington, D. C., was on the brief, for appellant.

Harry R. Benner, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and James A. Fitzgerald, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

REILLY, Chief Judge:

Appellant was tried on a three count indictment charging him with forgery, uttering, and receiving stolen property, under D.C.Code 1973, §§ 22–1401, 22–2205, respectively, found guilty by a jury on all counts, and sentenced to a term of six months to five years imprisonment on each —the sentences to run concurrently.

An issue raised for the first time on this appeal is whether the joinder of the receiving stolen property count with the forgery and uttering counts was prejudicial to the defendant. Appellant, while apparently conceding that the offenses were properly joinable under Super.Ct.Cr.R. 8(a),[1] contends that a severance should have been ordered under Super.Ct.Cr.R. 14, which provides in pertinent part that:

> If it appears that a defendant . . . is prejudiced by a joinder of offenses . . . in an indictment . . . or by such joinder for trial together, the court

may order . . . separate trials of counts, . . . or provide whatever other relief justice requires. . . .

The government attempted to prove that appellant came into possession of a credit card and an out-of-state driver's license, knowing these items to have been stolen,[2] and used such documents to procure merchandise fraudulently from the Cavalier Men's Shop. A sales clerk at that retail establishment testified that on October 20, 1971, a man purporting to be James W. Corbitt had bought approximately $200 worth of clothing in his store with a Bank-Americard, presenting for identification a driver's license and a Gulf Oil credit card, all of which bore Corbitt's name. A customer service slip with an imprint of the Corbitt BankAmericard and a handwritten signature in the corresponding name was then identified by the clerk as having been executed in connection with the sale. The witness was unable to testify, however, that the defendant, pointed out to him in court, was the person who had made the purchase.

The government then called to the stand one Shirley Davis, a cashier at the University Shop, another downtown retail store a few blocks away from the Cavalier. She testified that appellant and another unidentified man[3] entered her shop on the same afternoon, spent about 20 minutes looking at the merchandise and finally selected articles valued at $100. On this occasion, appellant's companion presented a BankAmericard, signed the name of James W. Corbitt, Jr., to the sales voucher, and

---

1. This rule permits joinder of two or more offenses in the same indictment if the offenses charged " . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

2. James W. Corbitt, Jr., to whom the license had been issued, testified that on October 18, 1971, he had been the victim of an armed holdup, one of the robbers going through his pockets and taking his change and wallet containing, *inter alia*, his driver's license and two

credit cards belonging to his father (a BankAmericard and Gulf Oil credit card), both of which he was authorized to use. Appellant was not accused of being one of the robbers.

3. Appellant testified that this man was an old friend, a former comrade-in-arms in the Marines, whose name he could not remember, but whom he had encountered on the street. He further said that he had entered the store with him just for the purpose of "rapping". Appellant also testified that he had never possessed the Corbitt documents and denied having gone to the Cavalier Shop.

showed a driver's license as proof of his identity.

The cashier also testified that she then telephoned the credit card agency to check, and was informed that the card had been reported stolen. She was asked to try detaining the customer until police arrived. In the interim, the other man departed on the pretext of having to place more coins in a parking meter. Appellant, meanwhile, waited impatiently at the counter, inquiring as to the reason for the delay. Twenty minutes later the police arrived and arrested him for forgery, aiding and abetting. He was kept in custody for one day, during which time he voluntarily consented to give the police samples of his handwriting. Thereafter, he was released, all charges against him having been dropped. Subsequently, the supposedly forged voucher at the Cavalier Shop was compared with the handwriting appellant had furnished the police. An arrest warrant against appellant was issued on April 10, 1972, based on the transaction at the Cavalier Shop. It was served upon him on May 13, 1972, when appellant was in custody because of an arrest on an unrelated charge.

The strongest supporting testimony for the prosecution was given by a police department handwriting expert. He stated unequivocally that a comparison of appellant's handwriting samples with the signature on the sales slip executed at the Cavalier Shop proved that appellant was the signer of the incriminating voucher.

Appellant's principal assignment of error centers on the admission of the testimony of the University Shop cashier, which in turn is the basis of appellant's contention of improper joinder. Although no motion to sever any of the counts in the indictment was made in the court below, it is now ar-

gued that the court committed prejudicial error in allowing the jury to hear testimony claimed to be germane only to the charge of possessing stolen property in the University Shop, and therefore—on this hypothesis—admissible only in a separate trial on this count. According to appellant, because all counts were joined for a single trial, the prejudice consisted of allowing the jury to cumulate the evidence of the incidents at the two shops and thereby infer from what happened at the second shop, a criminal disposition on the part of appellant from which a second inference could be drawn, *viz.*, that he was indeed the customer who forged the charge slip at the first shop.

For this proposition, appellant relies heavily on Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), a case we find inapposite here. In that case, the defendant was tried for crimes incidental to holdups in two different liquor stores. One of these robberies resulted in a killing and the indictment included a count of first degree murder. In reversing the convictions, the court held in *Gregory* that the failure to grant a severance was prejudicial on two grounds: (1) the possibility that the evidence with respect to the two robberies might have cumulated in the jurors' minds, and (2) *"the evidence as to one of the robberies was so weak as to lead one to question its sufficiency to go to the jury."* Id. at 144, 369 F.2d at 189. (Italics supplied.)

This is not the situation in the case at bar, for all counts in the indictment related to offenses at the Cavalier, not the University Shop.[4] Moreover, there is no contention here that the evidence on any count was insufficient for submission to the jury.

It is well settled that severance of various counts in an indictment is com-

4. It appears that the assertion of improper joinder rests in part on the mistaken premise that appellant, like the defendant in the *Gregory* case, was brought to trial on an indictment charging him with crimes committed at two different retail outlets. As we have noted, the stolen property (*i. e.*, aiding and

abetting) charge against appellant for his actions at the University Shop was dropped prior to his release by the arresting officers, and was not revived in the indictment subsequent to his second arrest for the transactions which had occurred earlier in the day at the Cavalier establishment.

mitted to the discretion of the trial judge and will be reversed only for a, clear abuse of discretion. Coleman v. United States, D.C.App., 298 A.2d 40, 42 (1972); Williams v. United States, D.C.App., 263 A.2d 659, 662 (1970). In the instant case, taking all circumstances into account, we cannot say that reversal is required for prejudicial misjoinder.

The evidence complained of certainly had probative value on the issue of appellant's possession of the BankAmericard and driver's license in the Cavalier Shop relating, as it did, to identity of him corroborative of the handwriting evidence. The testimony was therefore admissible, even in the event of a severance of counts. *See* Robinson v. United States, 148 U.S.App.D.C. 58, 459 F.2d 847 (1972); Bradley v. United States, 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969); Drew v. United States, 118 U.S. App.D.C. 11, 331 F.2d 85 (1964); 1 F. Wharton, Criminal Evidence § 243 (13th ed. 1972). Moreover, pretermitting that point, the possibility of prejudice to the defendant in his defense of the forgery and uttering counts was substantially prevented by a limiting instruction given by the trial judge, and acquiesced in by both counsel, following an inquiry by one of the jurors as to the status of the aiding and abetting charge arising out of the University Shop incident. The transcript (61–63) shows:

THE COURT: Just so you ladies of the jury will have it clear, there has been some talk about something that occurred at the University Shop, the men's shop, and the officer said that the Defendant was arrested for something there.

You are instructed that there is nothing in this case for you now, that has anything to do with the University Shop. The only matter which is before you ladies that you have to concern yourselves with are three charges which were indicated to you earlier, one which involved an allegation of forgery of a credit card sales draft at the Cavalier Men's Shop which the Defendant is alleged to have done.

The second count involves a passing or uttering of that particular sales slip bearing the purported signature of one James Corbitt at the Cavalier Men's Shop, and the third count involves the charge of receiving stolen property of Mr. Corbitt's consisting of a motor vehicle operator's permit and a credit card.

The testimony which I permitted with regard to what allegedly occurred later in the same day at the University Shop is admitted solely for the purpose of providing as much information as is possible for you, the ladies, to make a proper determination following my instructions about these charges against the Defendant that arise out of an alleged transaction at the Cavalier Men's Shop. There is no charge pending in this case involving anything that had to do with whatever the Detective may have laid charges on or whatever else may have happened at the University Shop. Consequently, you should not consider that at all.

You should listen to this evidence with a view to determining whether the Government proves its case beyond a reasonable doubt in regard to the charge of forgery and the charge of uttering and *the charge of receiving stolen property that grow out of the situation at the Cavalier Men's Shop.* Receiving stolen property involves the credit card and the driver's license which was recovered by Miss Davis allegedly at the second store, the University Shop.

Is that satisfactory, gentlemen?

[DEFENSE COUNSEL]: Yes, Your Honor.

[PROSECUTOR]: Yes, Your Honor.

THE COURT: Very well. Hopefully this will clear up by way of a little preliminary instruction to you and whatever questions you may have about it. [Italics supplied.]

Thus, the clear import of the trial court's instruction was that the jury should not consider at all the charges previously laid against appellant at the University Shop in arriving at a verdict as to the events at the Cavalier Shop. The jurors were told that they were to consider the evidence at the University Shop only in relation to any instructions that were to follow. The only instructions that followed, however, which even referred to the University Shop were the closing observations on receiving stolen property:

> Now, this particular instruction is given to you in connection with receiving stolen property. The Government's theory of the case with regard to the forgery and uttering is that the Defendant himself was the one who committed all of the element of each of those offenses. You should judge their evidence and the Defendant's testimony in reaching your conclusion as to those that when it comes down to the aiding and abetting, the Government presents that to you as part of its theory in connection with the fact that there is this other unknown individual that the Defendant testified he went into the store with and you must assess the testimony of the witnesses in connection with what occurred in the store and what happened otherwise and you may also consider the proper inferences that may be drawn from the testimony relating to what occurred in the Cavalier Men's Shop. (Tr. at 143–44).

> .   .   .   .   .   .

> .   .   .   As to the occurrences at the University Shop in connection with the receiving stolen property charge and as to the two charges on forgery and uttering, his defense is, simply stated, that he didn't do it.   .   .   .   (Tr. at 147.)

To be sure, the clarity of the court's original preliminary instruction was clouded by a seeming slip of the tongue in the last sentence of that portion of the charge just quoted. Obviously the court in mentioning the University Shop meant to refer to the Cavalier Men's Shop, for appellant on the witness stand did not dispute the description of the occurrences at the University Shop given by the government's witness. He merely denied any connection with the acts attributed to him at the Cavalier Shop. Despite appellant's argument to the contrary, a review of the entire record does not indicate that this verbal error seriously confused the jury. The evidence submitted on all the issues to the jury was simple and easily understandable, and numerous other court references in the transcript by name to the retail stores involved are correct.

■ Appellant also contends that the seven-month interval between the date of the offenses for which he was tried and the time of his arrest for those offenses deprived him of a fair trial in violation of the due process clause. Asserting that he was living during this period at the same address he had previously given, appellant attributes the delay in arresting him on the charges subsequently preferred as reflecting lack of proper police diligence. It is not alleged, however, that this was a deliberate act on the part of the police. Consequently, Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210 (1965), and decisions following it, like Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966), are really not pertinent. In those cases, the police, in order to preserve the usefulness of an undercover narotics agent, deferred arresting various persons with whom he had engaged in incriminating transactions until the agent's assignment had been completed. As the convictions in those cases had turned largely upon an identification by a police witness who had seen each defendant on only one brief occasion and was obliged to testify from his notes, the reviewing court deemed such strategy prejudicial, as the danger of an erroneous identification was heightened by the possibility of fading memory on the part of a witness participating in many similar transactions in a short period of time. In any event, the possibilities of

memories becoming clouded or a witness disappearing as a result of pretrial delay, are not enough to set aside a conviction. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

In the circumstances of the case before us, however, the delay has little significance in the absence of any showing of actual prejudice. Here, the government's case rested upon documents (the handwritten samples and the sales slips) and the unchallenged identification of appellant as the companion of the customer in the second shop—not upon testimony which might have been affected by the passage of time. Thus, only appellant's professed impairment of his ability to prepare an adequate defense becomes a relevant matter. We are not impressed by the argument that had appellant been charged more promptly, he might have been able to remember what he was actually doing at the time he was accused of being in the Cavalier Shop or that the clerk at that establishment would probably have recalled the physiognomy or general appearance of the fraudulent customer. Such an argument rests purely on speculation. Even less persuasive is the suggestion that—had it not been for the lapse of time—appellant could have located and called as a defense witness, the man who accompanied him to the second shop. Although characterizing this individual as a former Marine "buddy", appellant at trial said he had forgotten his name. Certainly, if the bond between the two men was as close as appellant indicated, seven months' time could scarcely have dimmed his memory to this extent without resort to a factor aptly described by government counsel as "selective nonremembrance".

We examined other contentions urged by appellant, but found nothing in the record as a whole that discloses prejudicial error.

Affirmed.