341 A.2d 421 (1975)
In re M. M. J.
No. 8292.
District of Columbia Court of Appeals.
Argued May 8, 1975.
Decided June 23, 1975.
W. Gary Kohlman, Washington, D. C., appointed by this court, for appellant. Robert M. Weinberg, Washington, D. C., appointed by this court, also entered an appearance for appellant.
S. Perry Jones, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee District of Columbia.
Before FICKLING, KERN and NEBECKER, Associate Judges.
PER CURIAM:
Appellant was found guilty of burglary and grand larceny.[1] He appeals the judgment entered on that finding on two grounds: (1) that the trial court erred in refusing to dismiss the petition because of prejudicial pre-arrest delay, and (2) that the evidence was insufficient to sustain a finding of guilty. Upon consideration of the arguments presented and after review of the record we find no error and affirm the judgment.
Appellant was arrested slightly more than three months after the commission of the offense with which he was charged. He contends that this delay was the result of a lack of diligence on the part *422 of the police,[2] and relies on cases such as Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965); Robinson v. United States, 148 U.S.App.D.C. 58, 459 F.2d 847 (1972) and In re G. T., D.C.App., 304 A.2d 865 (1973), for the proposition that such delay is unreasonable as a matter of law. Appellant claims that he was deprived of his ability to present a defense to the charges because of the delay, since at the time of trial he could not recall his activities or whereabouts on the night of the offense.[3]
Assuming that the Fifth Amendment requires dismissal of criminal charges if pre-arrest delay caused substantial prejudice to the defendant's right to a fair trial and was an intentional device to gain tactical advantage over the accused, see United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Parish, 152 U.S.App.D.C. 72, 76, 468 F.2d 1129, 1133 (1972), cert. denied, 410 U.S. 957, 93 S.Ct. 1430, 35 L.Ed.2d 690 (1973), there was no intentional delay in this case. The trial court found some lack of diligence, but that the resulting delay was at most a few weeks, and was insignificant. For that reason, the cases typified by Ross v. United States, supra, are not applicable to this case. Hurt v. United States, D.C.App., 314 A.2d 489, 493 (1974). See United States v. Parish, supra at 76 n. 19, 468 F.2d at 1133 n. 19.
In an appropriate case extreme prejudice alone might warrant dismissal of charges, but no such prejudice has been shown in this case. The trial court did not explicitly rule on the question of prejudice, but it did consider that factor, among others,[4] in denying the motion to dismiss. The only evidence of prejudice presented by appellant was his testimony, at the hearing on the motion to dismiss, that he could not remember what he was doing on the night in question. A self-serving assertion of inability to recall is not, under the circumstances of this case, sufficient to compel dismissal of the charges.[5]Hurt v. United States, supra.
Appellant's second contention is that the only evidence linking appellant to the offense  a fingerprint found inside the burglarized house  was insufficient to sustain the finding of guilt. His claim is that the government's own evidence established that the fingerprint could have been left in the house innocently, since appellant lived close to complainant, and the evidence suggested that appellant and complainant's son were acquainted.
The burden on the government, when it relies on fingerprint evidence, is to negate at least the most reasonable explanations of that evidence which are consistent with innocence, and to show that the fingerprints were made during the commission of the crime. Patten v. United States, D.C.App., 248 A.2d 182 (1968); Townsley v. United States, D.C.App., 236 A.2d 63 (1967). In the instant case, the government satisfied that burden. The *423 print was found on a transom over an inside door, an area generally inaccessible to the public or to appellant, and the government did introduce evidence tending to show lack of access in fact by appellant.[6]Hawkins v. United States, D.C.App., 329 A.2d 781 (1974). In addition, the location of the print supports the inference that it was placed there during the commission of the burglary. It was found on the frame of a transom window through which forcible entry to a locked room was made during the burglary. The transom window had been knocked out by breaking the wooden frame on either side of it and the frame was found on the floor outside the door.
The judgment must be and hereby is
Affirmed.
NOTES
[1] He was acquitted of a third charge of malicious destruction of property.
[2] The victim of the burglary told police that he suspected the "boys down the street", including appellant, of the crime. Police recovered fingerprints from the premises on the night of the offense, but a month elapsed before the officer in charge of the investigation was notified that one of the prints was readable. There was a short delay before appellant's fingerprints were submitted for comparison with the recovered print, and an additional delay between the time a match was reported and appellant's arrest. We cannot agree that appellant was the "prime suspect" from the beginning. The record does not reflect that the complainant gave a specific reason for suspecting appellant, and police did not discover any other evidence linking appellant to the crime.
[3] Appellant did not testify at the trial and called no witnesses in his defense.
[4] The other factors considered by the trial court were the length of the delay, the deliberateness of the delay, and the availability of the defendant.
[5] We note that although the theory of appellant's defense was that his fingerprint could have been left in the complainant's house at a time other than during the burglary, he did not testify that he had ever been to the house, or even that he could not recall whether he had ever been there.
[6] The complainant testified that he had never seen appellant at his house, or given him permission to enter it. He also stated that he had instructed his son not to invite boys from the neighborhood to the house.