Merrimack
No. 6862

STATE OF NEW HAMPSHIRE

v.

RUSSELL E. COLLINS, JR.

September 30, 1975

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general *(Mr. Johnson* orally), for the State.

*Leonard J. Merski (Mr. Merski* orally), and *Mark Donatelli,* law student, for the defendant.

GRIMES, J. The main issues in this case involve the questions of whether the double jeopardy clause prevents a prisoner who has been subjected to prison discipline from being convicted of a crime arising out of the same incident, whether there has been a denial of a speedy trial, whether a statement made to the warden without *Miranda* warnings was admissible, whether it was error to permit it to be disclosed that the alleged crime occurred while defendant was in prison, and whether interference by the trial justice denied defendant a fair trial.

On August 6, 1971, at the State prison, a prisoner (Staples) suffered puncture-type wounds in his abdomen and back. Defendant was a prisoner at the institution serving a sentence for assault with intent to murder a police officer. The wounded man said he saw an ice pick in defendant's hands. The victim was taken to the Concord Hospital. The warden testified that sometime later someone from the hospital telephoned the prison to find out what kind of weapon had been used and to locate it. The warden went to a segregation

room where defendant was confined and asked what instrument had been used. Defendant replied that it was an ice pick and that he had thrown it away. This evidence was introduced subject to exception at defendant's trial. That same night, defendant was placed in solitary confinement until September 3, 1971, and thereafter following an assault on another inmate, he was placed indefinitely in punitive segregation.

On May 2, 1972, defendant filed a civil rights action against the warden in the United States District Court for the District of New Hampshire, in which he sought to enjoin further punitive segregation. On February 23, 1973, the court ruled that Collins had been deprived of his constitutional rights and ordered his release from punitive segregation and suggested a disciplinary hearing meeting due process requirements. *Collins v. Hancock,* 354 F. Supp. 1253 (D.N.H. 1973).

On October 17, 1972, Collins was indicted for aggravated assault on Staples on August 6, 1971. The case was set to be tried on December 18, 1972. On December 14, 1972, the State moved for a continuance in order to complete proceedings to obtain a prisoner from another State as a witness under RSA 613-A:6 (1959). Trial began on May 2, 1973, before *Grant,* J. Collins was found guilty and sentenced to not more than ten nor less than five years to run consecutively with the sentence he was then serving. All questions of law raised by the defendant were transferred by *Loughlin,* J.

## I. Double Jeopardy

Defendant claims that his rights under the double jeopardy clauses of both the Constitutions of the United States and this State have been violated since he is being punished twice for the same act. Defendant misconceives the reach of the double jeopardy clauses. They do not prevent one from being punished twice for the same act, but from being tried and convicted for the same offense. *Breed v. Jones,* 421 U.S. 519 (1975). A single act may constitute more than one offense. *Gore v. United States,* 357 U.S. 386 (1958). The incident of August 6, 1971, was a breach of prison discipline and also constituted a crime under State law. The discipline meted out by prison authorities in the form of solitary confinement did not put defendant in jeopardy so as to bar his prosecution for the criminal offense. *People v. Eggleston,* 255 Cal. App. 2d 337, 63 Cal. Rptr. 104 (1967); *Patterson v. United States,* 183 F.2d 327 (4th Cir. 1950); *Mullican v. United States,* 252 F.2d 398 (5th Cir. 1958). Defendant's reliance on

*Waller v. Florida,* 397 U.S. 387 (1970), is misplaced. The narrow holding of that case only prohibited two courts deriving their power from the same source from placing a subject on trial for the same offense.

## II. Speedy Trial

The offense occurred on August 6, 1971. Defendant was indicted on October 17, 1972. His case was set to be tried on December 18, 1972, but due to the continuance already mentioned was begun on May 2, 1973. Defendant does not argue that the time between indictment and trial deprived him of his right but rather that his being placed in solitary confinement constituted an arrest and that the time began to run from that time. It is true that the speedy trial right attaches at the time of arrest or indictment, whichever occurs first. *United States v. Parish,* 468 F.2d 1129 (D.C. Cir. 1972); ABA Standards Relating to Speedy Trial § 2.2 (Approved Draft 1967). However, his solitary confinement did not constitute an arrest for the crime with which he was later indicted. His solitary confinement was not for the purpose of having him available to answer for the commission of this crime (RSA 594:1 (1965); *State v. Hutton,* 108 N.H. 279, 285, 235 A.2d 117, 121 (1967); *State v. Murray,* 106 N.H. 71, 73, 205 A.2d 29, 30 (1964)), but rather was a matter of prison discipline. Although the time does not start to run with regard to the right to a speedy trial until the defendant is charged, due process may require dismissal if the delay in prosecution caused actual prejudice to defendant's right to a fair trial. *United States v. Marion,* 404 U.S. 307 (1971). Defendant claims such prejudice but he has proved none. He has not been able to show that his inability to find more than one witness who remembered the event and that his inability to establish a defense of self-defense were the result of the delay in obtaining an indictment. The trial court's denial of defendant's motion to dismiss on this ground includes an implied finding of no prejudice, which is supported by the record.

## III. The Prison As the Scene of the Crime

We find without merit defendant's claim that revelation to the jury that the crime occurred in prison and thereby the fact that defendant had a previous felony conviction denied him a fair trial. We agree with the trial court that it would have been next to impossible to conduct the trial without reference to the scene of the crime and failure to attempt to do so was not an abuse of discretion. In any

event, the defendant's prior record was properly admitted under limiting instructions on the question of his credibility as a witness when he took the stand.

## IV. Conduct of the Trial Justice

Also without merit is defendant's claim that the trial justice showed prejudice by not allowing him to put the court reporter at another hearing on the stand regarding prior statements of the warden, a prosecution witness, and by interrupting defendant's counsel during his opening statement on the ground he was arguing when there had been no objection by the prosecution. As to the first incident, the court properly exercised its discretion in requiring use of the stenographic record in cross-examination of the witness. When the record became available through the notes of the court reporter, the court properly required that the warden be interrogated first as to his prior testimony which was claimed to be inconsistent with his testimony at trial. After this was done, defense counsel declined the opportunity to call the court reporter. We find no error or prejudice resulting from the manner the matter was handled by the court.

Although operating in the adversary system, trial judges are not mere referees. They have the right and in fact the duty to see that trials are conducted in a fair and orderly manner, and may on their own, without waiting for objection from opposing counsel, control the conduct of counsel and the introduction of evidence. Such action does not demonstrate prejudice but rather a proper concern for the real purpose of the adversary system. *See* ABA Standards Relating to The Function of the Trial Judge § 1.1 (Approved Draft 1972).

## V. The Statements to the Warden

Defendant's claim relating to the admission of the statements made by him to the warden on the night of the incident in question is without substance.

We need not and do not decide whether there had been a valid waiver of defendant's fifth amendment rights because as the trial developed the defendant could not have been prejudiced by the admission of the statements. There was ample independent evidence that defendant stabbed the victim so that the admissions of the defendant were not required to make out a prima facie case. Defense counsel in his opening stated that there was no denial that there had been an "occurrence" and that it was a matter of self-

defense. The defendant took the stand and freely admitted that he had stabbed the victim a number of times with a weapon which from his description resembled an ice pick. The fact that defendant stabbed the victim was not therefore a contested issue in the case and there is no possibility that the admission of the statement could have prejudiced the defendant.

*Exceptions overruled.*

All concurred.