**UNITED STATES of America,
Appellant,**

v.

**Rogelio Modera LARA et al.**

No. 74–1657.

United States Court of Appeals,
District of Columbia Circuit.

Argued Aug. 19, 1975.

Decided Oct. 2, 1975.

Charles L. Jaffee, Atty., Dept. of Justice with whom Earl J. Silbert, U. S. Atty., was on the brief for appellant.

Roark M. Reed, Washington, D. C. (appointed by this Court) for appellee, Baylor.

Allan M. Palmer, Washington, D. C. (appointed by this Court) for appellees, McQueen, Smith, and Turner.

Ronald Kovner, Washington, D. C. (appointed by this Court) for appellee, Saxon.

Melvin M. Burton, Jr., Washington, D. C., was on the brief for appellee, Jones.

David B. Javits, Miami, Fla., was on the brief for appellee, Cartaya.

George Nicholas, Miami, Fla., entered an appearance for appellee, Roque.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

ROBB, Circuit Judge:

This is an appeal by the government, pursuant to 18 U.S.C. § 3731, from an order of the District Court dismissing an indictment. The court dismissed as to eight of the defendants on the ground that they had been denied their right to a speedy trial, and held that the defendants Roque and Cartaya might be tried in some other jurisdiction, but not in the District of Columbia.

An understanding of the issues requires a chronological tracing of the tortuous path taken by this prosecution.

On October 26, 1972 a grand jury in the District of Columbia returned an indictment charging twelve defendants, including six of our appellees, with conspiracy to violate various narcotic laws. The indictment alleged a conspiracy existent from about September 1, 1967 to about April 30, 1971; it also charged a number of the defendants with substantive violations of the narcotic laws. This was criminal case No. 1971–72 in the District Court. On January 31, 1973 the United States Attorney procured a superseding indictment, criminal No. 99–73, naming the twelve original defendants and one additional defendant, our appellee Turner.

On January 5, 1973 District Judge Gesell entered a pretrial order setting the case for trial June 11, 1973 and reserving six weeks for the trial. Among other things the order directed that on or before February 20, 1973 the United States provide, for inspection by the defendants and their counsel, the transcript of all grand jury proceedings relating to the indictment; an order issued February 21, 1973 amended this provision to provide that grand jury transcripts be furnished on or before April 16, 1973.

On motion for the government the District Court dismissed the first indictment, criminal No. 1971–72, on February 26, 1973. On March 29, 1973 the government orally moved to dismiss the second indictment, criminal No. 99–73, returned January 31, 1973. As reasons for the dismissal the prosecutor advanced (1) "grave deterioration in the health of a key witness" who would probably not "be able to appear in Court at the time scheduled for trial" and (2) the discovery by the government that another important witness was unreliable. The court granted the motion and dismissed the indictment.

On January 31, 1974 two defendants filed a "Motion for Clarification" of the order of March 29, 1973 dismissing the superseding indictment. The motion asked the court to specify that the dismissal was with prejudice. In response the court, in an order entered February 14, 1974, stated in part:

> The case was not dismissed with prejudice. The Government informed the Court the case would not be reinstituted in this District. The Court was of the impression that the possibility of proceeding in Florida or elsewhere still existed but not on an identical indictment.

> * * * * * *

> This was not a dismissal for lack of speedy trial or want of diligent prosecutorial efforts. No prejudice to any defendant is now asserted.

On December 27, 1973, nine months after the dismissal of the District of Co-

lumbia case, the government procured a third indictment in the Southern District of Florida. Indicted were six of the defendants who had been named in both the original District of Columbia indictment returned October 26, 1972 and in the second District of Columbia indictment of January 31, 1973. Also indicted was Turner, a defendant in the second District of Columbia indictment. To this list were added defendants Saxon, Roque and Cartaya. The Florida indictment alleged substantially the same offenses charged in the two District of Columbia indictments. All ten Florida defendants are appellees in the case now before us.

The Florida case was set for trial at Miami beginning May 13, 1974; however, the defendants filed motions to transfer the proceeding to the District of Columbia, pursuant to Rule 21(b), *Fed.R. Crim.P.*, and motions to dismiss for lack of a speedy trial.

On April 25, 1974 Chief Judge Fulton of the Southern District of Florida held a hearing and heard testimony and argument on the motions. A special agent of the Drug Enforcement Administration, identified as the "case agent", who had been in charge of the case for approximately two years, was called as a witness. He testified that when the indictment was returned in the District of Columbia the investigation by his agency was complete, "everything [the agency] had was presented to the Grand Jury at that time", and the agency was opposed to the dismissal of the case. As the agent put it "[w]e should have gone forward." According to him the case presented to the prosecutor in Florida was essentially the same as the case presented to the prosecutor in the District of Columbia and the same information given to the grand jury in the District of Columbia was presented to the grand jury in Florida. The case was brought to Florida, said the agent, because the United States Attorney in Washington "did not feel that he could proceed".

It appeared that the "deterioration in the health" of the witness mentioned by the prosecutor in Washington had been caused by multiple gun-shot wounds which the witness suffered before the return of the second District of Columbia indictment. Notwithstanding the shooting, the decision to present the case for reindictment in Florida was made immediately after the dismissal of the second indictment and the witness was available to testify in the Florida case. The record also disclosed that six of the ten defendants, including those alleged to be principals in the conspiracy, resided in or near the District of Columbia, and that most of the alleged overt acts in furtherance of the conspiracy were committed in the District of Columbia. Finally, it appeared that the government in a pleading filed in Washington had opposed the part of Judge Gesell's pretrial order that required the government to divulge substantially in advance of trial the names of its witnesses and to provide the defense with transcripts of the grand jury testimony of these witnesses. Dismissal of the indictment came before the prosecutor complied with this direction, and of course made compliance unnecessary.

On the evidence adduced at the hearing Chief Judge Fulton found:

> that in seeking the indictment of these defendants in the Southern District of Florida the government was "Court Shopping." It became quite evident from the evidence that the agency in question brought this matter to the Grand Jury in Southern Florida, believing that government counsel and the Court would be more favorable to the government's cause than in the District of Columbia.

Chief Judge Fulton concluded that the case should be transferred to the District of Columbia, in view of the residence of the defendants, the location of the witnesses, and the situs of most of the alleged overt acts. Accordingly the judge transferred the case, along with the motions to dismiss, with the suggestion that if the case were assigned to the same judge who dismissed the second District of Columbia case "he should be better

qualified than any other judge to resolve the speedy trial issue which is pending."

After the case returned to the District of Columbia the motions to dismiss for want of a speedy trial came on for hearing May 16, 1974, before District Judge Gesell. He held that the government had not sustained its burden of justifying a trial after the delay of nineteen months since the original indictment was returned; that the delay had been "unconscionable" and that prejudice to the defendants was obvious. He added that when he dismissed the second District of Columbia indictment, criminal No. 99-73, "the dismissal was definitely with prejudice as to any possibility of the reinstitution of the case here", that he was assured by the prosecutor that any further proceedings would be elsewhere, it being "further clearly indicated that it would not be the same case or on the same evidence—as apparently is now the case." Because of these considerations he dismissed the Florida indictment with prejudice as to defendants Lara, Mayari, Jones, McQueen, Smith, Baylor, Turner and Saxon. As for the defendants Roque and Cartaya the court observed:

These defendants, recently added to the list of defendants, have really no clear basis for a speedy trial motion and, indeed, I don't believe they made such motions—or one of them may have—in the Florida jurisdiction. However, each of these defendants resides in Florida.

Counsel has indicated to this Court that one is quite willing to try the case anywhere, while the other has strong reasons to try the case in Florida, and the Court just does not interpret the order of Chief Judge Fulton as requiring the transfer of this case if the only defendants are the two defendants recently added.

Accordingly, should the government conclude that it wishes still to proceed as to Roque and Cartaya, as far as this Court is concerned it may do so, but they are entitled to a trial in Florida, or in some other jurisdiction if they

persist, but they will not and they cannot be tried here.

The government challenges these rulings by Judge Gesell.

■ The Supreme Court has described the right of a speedy trial as "amorphous" and "slippery", *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); it "is necessarily relative . . . and depends upon circumstances", *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). In other words whether a speedy trial has been denied in any case depends upon the particular circumstances of that case. In *Barker v. Wingo*, the Supreme Court identified four factors which should be considered in assessing the circumstances: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182. This test has been applied by this court in *United States v. Parish*, 152 U.S.App. D.C. 72, 468 F.2d 1129 (1972), *cert. denied* 410 U.S. 957, 93 S.Ct. 1430, 35 L.Ed.2d 690 (1973), and *United States v. Jones*, 154 U.S.App.D.C. 211, 475 F.2d 322 (1972), among other cases.

The government concedes that in this case the defendants asserted their right to a speedy trial.

Turning to the reason for the delay the government insists that it was caused by circumstances beyond the control of the prosecutor and that the government used due diligence in bringing the case to trial. We are told that the second District of Columbia indictment was dismissed because one witness had been shot and another found to be unreliable. The delay of nine months, while the case was reviewed by the Miami prosecutor, was, says the government, "a short one". The government notes that the delay of five months between December 27, 1973, when the Florida indictment was returned and May 13, 1974, when the case was scheduled to be tried, was in part caused by

the defendants' attempt to avoid their removal to Florida.

 We have said "[w]henever the Government's action at any stage of the proceeding indicates bad faith, neglect, or a purpose to secure delay itself or some other procedural advantage, the resulting delay is not justified." *United States v. Bishton,* 150 U.S.App.D.C. 51, 54, 463 F.2d 887, 890 (1972). We cannot tolerate long and unnecessary delay caused by the deliberate act of the government in seeking a supposed advantage. *See Petition of Provoo,* 17 F.R.D. 183 (D.Md.1955), *aff'd per curiam,* 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). We have said also that cases involving more than six months delay are properly subject to inquiry and a need for justification. *United States v. Ransom,* 151 U.S.App.D.C. 87, 88, 465 F.2d 672, 673 (1972). Finally, we observe that Rule 2–7(d) of the United States District Court for the District of Columbia provides: "All indictments returned shall be tried within 180 days from return of indictment if the defendant is on bond, or shall be tried within 90 days from return of indictment if the defendant is in jail solely for failure to make bond for the indicted offense. . . . The United States or the defendant may, for good cause shown, petition the judge to whom the case is assigned to extend the time period applicable to the particular case." This rule, and the sense of urgency it connotes, underscore the importance of prompt trials, in the interest of both the accused and the public. *See Barker v. Wingo,* 407 U.S. at 519, 92 S.Ct. 2182.

In this case we have a delay of nineteen months between October 26, 1972, when the first District of Columbia indictment was returned, and May 16, 1974, when the Florida indictment was dismissed by Judge Gesell. There was an interim of sixteen months between January 31, 1973, the date of the second District of Columbia indictment, and the dismissal. Calculating the delays on a somewhat different basis we find that fourteen months elapsed between the filing of the first District of Columbia in-

dictment, October 26, 1972, and the date of the Florida indictment, December 27, 1973; and eleven months passed between the date of the second District of Columbia indictment, January 31, 1973, and the return of the Florida indictment. The appellees, Lara, Mayari, Jones, McQueen, Smith and Baylor were defendants in all three indictments. The appellee Turner was named in the second District of Columbia indictment and in the Florida indictment. Since the case alleged in all three indictments was the same the government must justify a delay that began to run with the filing of the District of Columbia indictments. We hold that the government's attempt at justification has failed.

We are not impressed by the contention that the delay was caused by circumstances beyond the prosecutor's control. Although the prosecutor represented that the second District of Columbia indictment should be dismissed because of the illness of one witness and the unreliability of another, there is substantial basis in the record for Chief Judge Fulton's finding that dismissal was sought because the government believed the Florida court "would be more favorable to the government's cause than [the court] in the District of Columbia." The case had been set for trial June 11, 1973 in the District of Columbia and the case agent and his agency, the Drug Enforcement Administration, believed it was ready for trial and should be tried when scheduled. The prosecutor was resisting Judge Gesell's order that the grand jury testimony and the names of witnesses be disclosed before trial. The reasons advanced for the dismissal were insubstantial. The discovered unreliability of one witness was a difficulty not uncommon in criminal prosecutions and certainly not a reason to abandon the entire case. The injured witness had been shot before January 31, 1973, when the second District of Columbia indictment was returned. Had he not recovered sufficiently to appear at trial on June 11, 1973 the court no doubt would have entertained a motion for a reasonable con-

tinuance. The prosecutor did not choose to follow this course, but immediately after the dismissal on March 29, 1973 and in spite of the incapacity of the witness, he made the decision to proceed with the same case in Florida. Considering these facts we agree with Chief Judge Fulton's conclusion that when the government shuttled the case to Florida it was deliberately seeking the supposed advantage of more favorable treatment in that jurisdiction.[1] The prosecutor can hardly be heard to say that this maneuver was not a matter within his control.

When it moved its case to what it considered the more salubrious climate of Florida the government was charged with notice that a substantial period of time would be required for the Miami prosecutor to review the case; and the government now concedes that nine months was a "short" time for that review. Since we hold that the decision to dismiss in the District of Columbia and begin the case anew in Florida was dictated by tactics and not by necessity the government must be charged with these nine months of delay. In short, without laboring the matter or making further reference to computations of time, we hold that as to the defendants who were named in the District of Columbia indictments there was unnecessary and unconscionable delay for which the government was responsible.

The government asserts that "the prejudice to the defendants is slight". Although nineteen months elapsed between the date of the first District of Columbia indictment and the dismissal on May 16, 1974, the government points out that during nine months of that period the defendants were not under indictment and during the other ten months they were free on bond. Conceding that the "defendants have alleged that they have no recall about events that occurred during the period of time that the indictment covered"—the period from September 1, 1967 to October 25, 1972—

the government answers that "some of the events occurred as recently as two years ago." We are not persuaded by this argument, for considering all the circumstances of this case we think prejudice must be presumed from, or necessarily inherent in, the long delay which occurred. *See Petition of Provoo, supra,* at 203; *Hedgepeth v. United States,* 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966); *Hinton v. United States,* 137 U.S. App.D.C. 388, 392, 424 F.2d 876, 880 (1969). No one experienced in the trial of criminal cases, as was the able district judge, could reach any other conclusion.

What we have said disposes of the appeals of Lara, Mayari, Jones, McQueen, Smith, Baylor and Turner. The judgments dismissing the indictment as to them will be affirmed.

The cases of Saxon, Roque and Cartaya stand on a different footing. They were named as defendants for the first time in the Florida indictment of December 27, 1973. Noting that Roque and Cartaya had been "recently added to the list of defendants" the District Court observed that they had "really no clear basis for a speedy trial motion". In this the District Court was correct, for the right to a speedy trial does not accrue to a defendant until he has been accused. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Nickens v. United States,* 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), *cert. denied,* 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964). The delay of five months between the return of the Florida indictment and Judge Gesell's ruling on May 16, 1974 did not violate the defendants' right to a speedy trial; nor could the defendants validly claim that their rights would be violated because discovery and other proceedings for their benefit might cause further delay. *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *Blunt v. United States,* 131 U.S.App.D.C. 306, 310, 404 F.2d 1283, 1287 (1968), *cert. denied,* 394

---

1. We note that the discovery order entered in Florida April 9, 1974 did not require the pre-

trial disclosure of grand jury testimony and names of witnesses.

U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969); *Hinton v. United States,* 137 U.S. App.D.C. 388, 392, 424 F.2d 876, 880 (1969).

The situation of the defendant Saxon is the same as that of the defendants Roque and Cartaya. He was added to the list of defendants by the Florida indictment of December 27, 1973, his case was a new case as of that date, and the indictment as to him should not have been dismissed. By the same token, as we have seen, the cases of Roque and Cartaya were new, and there was no basis for holding as a matter of law that they could not be tried in the District of Columbia. Accordingly, the judgment dismissing the Saxon case is reversed with directions to reinstate the indictment, for trial in the District of Columbia, without prejudice to a motion under *Fed.R.Crim.P.* 21(b) to transfer the proceeding to another jurisdiction. The cases of Roque and Cartaya are remanded for trial in the District of Columbia, also without prejudice to motions for transfer.

*So ordered.*

WILKEY, Circuit Judge (concurring):

I concur in the result reached as to all defendants and in the opinion of the court as I understand it. For the precedential value this case may have in the future, I do wish to state my understanding of the holding of the court in regard to the six defendants who were indicted both in Florida and previously in the District of Columbia.

The critical reason the court finds that the prosecution for these defendants must be dismissed for denial of speedy trial is the unconscionable delay between the dismissal of the indictment here and the new indictment in Florida:

> Since we hold that the decision to dismiss in the District of Columbia and begin the case anew in Florida was dictated by tactics and not by necessity the government must be charged with these nine months of delay. In short, without laboring the matter or making further reference to computations of time, we hold that as to the defendants who were named in the District of Columbia indictments there was unnecessary and unconscionable delay for which the government was responsible.

The Government had apparently resolved to bring the case in another jurisdiction at the time it sought from Judge Gesell dismissal without prejudice of the indictment. The prosecutors who had twice presented the case to grand juries in the District of Columbia were presumably thoroughly familiar with the case; they could have been named special assistants to the Attorney General, been sent to Florida, and presented the case to a grand jury in that District within a week. Later, after thorough preparation local Assistant U. S. Attorneys could have prosecuted at trial. There was no need whatsoever for a nine-month delay for prosecutors in Florida to familiarize themselves with the facts of this difficult and complicated case.

This is not to say that in every case the date of the first indictment is the initial measuring point for speedy trial purposes. There could, for example, be a bona fide dismissal followed by a reindictment after discovery of important new evidence, in which event I would think the time for speedy trial would not run from the date of the first charge. But here all indictments seem to be linked, with nothing new except additional defendants, so it is not unfair to hold the Government should have continued without interruption once it began.

If the opinion of this court holds that the prosecution was unjustified in "court shopping," I do not agree with this portion of the opinion. The trial judge knew the Government intended to bring a similar case in another jurisdiction, and did not think it improper. To me it was entirely a responsible and wise act for the Government, faced with the "deteriorating health" of one of its principal witnesses because of multiple gunshot wounds, to move this case to the more salubrious climate of Florida. And, the "unreliable witness" may have become more reliable once removed from these environs. Before and after the time of

these indictments there were other cases in the District of Columbia in which a number of witnesses had to be protected from assassination, one or two unsuccessfully, and some judges were likewise afforded armed protection. If the prosecution felt that their witnesses could be protected better in Florida or at least would feel less intimidated once away from the District of Columbia, I think it was in the public interest for the prosecution to move the case there. The Government's fault, in my judgment, lies solely in the fact that they did not move swiftly enough once the decision was reached.