675 P.2d 120

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Bryan McCRARY and Bart Dewayne
Burdick, Defendants-Appellants.**

No. 14652.

Supreme Court of New Mexico.

Jan. 5, 1984.

Norvell & Glover, David L. Norvell, Albuquerque, for defendant-appellant Burdick.

Sarah M. Singleton, Santa Fe, for defendant-appellant McCrary.

Paul Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

This appeal challenges the first degree murder convictions of Bryan McCrary and Bart D. Burdick.

McCrary had attended a carnival in Hobbs and felt he was cheated out of sixty-four dollars. He and Burdick decided they would get revenge by shooting the tires of the carnival trucks. Armed with two .22 caliber rifles, two 30-30 caliber rifles, a shotgun, and accompanied by William Sutton, they returned to the carnival site at 1:30 a.m.

With Burdick driving, the group contend they circled the area two to three times in a pick-up truck. Stopping momentarily and then driving along slowly, they discharged about twenty-five shots into several tractor-trailers and cabs. Loretta DeGracia was in a sleeper cab of one of the trucks. Curtains were pulled in the windows above the bed. She was killed by a high-caliber bullet in the head.

We first address the issues raised by both appellants. McCrary and Burdick claim: (a) the evidence does not support first degree murder convictions; (b) they were denied a speedy trial; and (c) the trial court's refusal to instruct on second degree murder was in error.

McCrary and Burdick contend that the evidence does not support a finding that they acted with a "depraved mind regardless of human life." NMSA 1978, § 30-2-1(A)(3) (Cum.Supp.1983). McCrary adds that a first degree murder conviction must be supported by evidence that he had a subjective knowledge that his act was greatly dangerous to the lives of others.

He argues that the circumstances support only a second degree conviction because they demonstrate an objective knowledge.

McCrary alleges that a subjective knowledge that the shooting would be dangerous to any person within the truck is negated because they waited until they thought all people had left the carnival, circled two or three times to make sure no one would get hurt, and they only intended to shoot the tires. Also, a police detective indicated that all mobile homes and campers were located a hundred feet from the damaged trucks. The campers and mobile homes were not struck by the shots.

The standards of proving the defendant's culpable knowledge for a depraved mind murder are given in the Uniform Jury Instructions, 2.05 and 2.10. Instruction 2.05 states:

> The defendant is charged with first degree murder by an act greatly dangerous to the lives of others indicating a depraved mind without regard for human life. For you to find the defendant guilty ..., the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> ′ ....
>
> 4. The defendant knew that his act was greatly dangerous to the lives of others....

NMSA 1978, UJI Crim. 2.05 (Repl.Pamp. 1982). But to prove the lesser included offense of second degree, Instruction 2.10 requires the state to prove "[t]he defendant knew that his acts created a strong probability of death or great bodily harm to [name of victim] [or any other human being]." NMSA 1978, UJI Crim. 2.10(2) (Repl.Pamp.1982) (footnotes omitted).

■ The committee commentary to the Uniform Jury Instruction 2.05 provides that the first degree depraved mind murder instruction sets forth a subjective test while second degree murder requires an objective test. The committee commentary is persuasive authority, although it is not binding on this Court. *Rutherford v. Dar-*

*win*, 95 N.M. 340, 622 P.2d 245 (Ct.App. 1980).

■ We agree that the first degree instruction requires a subjective knowledge. However, the knowledge is not that asserted by McCrary. Defendants did not have to actually know that DeGracia was in the sleeper compartment. Rather, sufficient subjective knowledge exists if Defendants' conduct was very risky, and under the circumstances *known to Defendants* they should have realized this very high degree of risk. *See* W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 70 (1972).

■ As is generally the case in a first degree murder case, the element of intent is seldom susceptible to direct proof and accordingly may be proved by circumstantial evidence. *State v. Manus*, 93 N.M. 95, 98, 597 P.2d 280, 283 (1979). Seldom will an accused admit at trial that he actually knew his acts placed another's life in great danger. In these instances, the jury decides whether there is a subjective knowledge of risk by considering "what the defendant should realize to be the degree of risk, in the light of the surrounding circumstances which he knows...." W. LaFave & A. Scott, Jr., *supra*, at 542.

■ There is reasonable support in the evidence for the jury to find that Defendants knew their act was greatly dangerous to the lives of others. Although Defendants claim that they only intended to shoot the tires, and not to harm anyone, the jury could disregard their claim. Not a single tire was shot, yet there were twenty-five bullet holes in the upper parts of the vehicles. In light of the surrounding circumstances, Defendants should have realized the risk of someone sleeping in the sleeper compartment. McCrary and Burdick repeated several times that they only wanted to shoot low lest they injure someone. Also, they contemplated slashing the tires but this plan was rejected because of the danger of being caught. This testimony supports a jury determination that Defendants had reason to know people were in the area. We will not consider the weight of

the evidence if substantial evidence supports the verdict. *See State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). Accordingly, we affirm the jury's finding of first degree murder.

■ Each defendant claims a violation of his right to a speedy trial under NMSA 1978, Crim.P.Rule 37 (Cum.Supp.1983). Rule 37 requires that an indictment or information be dismissed with prejudice if trial of any person does not commence within six months, *inter alia,* after the charges are filed, after the mandate of an appeal is filed, or within an extension granted by the Supreme Court. Eighteen months passed between Defendants' arrest and trial. This delay triggers an inquiry into the factors balanced to ascertain whether one's right to a speedy trial was violated. *State v. Tafoya,* 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977).

■ The four factors that must be weighed are the "length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant." *State v. Harvey,* 85 N.M. 214, 215–16, 510 P.2d 1085, 1086–87 (Ct.App.1973); *see also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Contrary to Defendants' assertion, we do not find an unjustified delay which compels relief.

On April 25, 1981, Defendants were charged with an open charge of murder. In June, Magistrate Judge Hallam ordered that they be bound over for trial in the district court for "2d Degree Murder or lesser Offense." In disregard of the bind-over order, State filed an information charging defendants with first degree murder. In July, Defendants moved to dismiss the information because it did not conform to the bind-over order. This motion was denied. Defendants filed an interlocutory appeal on September 15, 1981. In January 1982, the court of appeals reversed the trial court, holding that "the information must charge substantially the same offense as that charged by the magistrate." *State v. McCrary,* 97 N.M. 306, 312, 639 P.2d 593, 599 (Ct.App.1982).

In January 1982, prior to the court of appeals ruling, State obtained from this Court an extension of the six-month requirement under Rule 37. The petition was joined by opposing counsel's stipulation. This Court granted until July 1982 to bring the matter to trial. After the court of appeals mandate was issued, trial was scheduled for June 8, 1982.

On May 26, 1982 State filed *nolle prosequis* to dismiss its informations, which charged second degree murder. A grand jury indictment was acquired in August 1982. Defendants were charged with first degree murder. Trial commenced on October 27, 1982 and on October 28, the jury returned a verdict of guilty of first degree murder.

First, the delay, occasioned by Defendants' resistance to a first degree murder charge, and their interlocutory appeal, does not impugn bad motives to State as a denial of Defendants' right to a speedy trial. We are not penalizing Defendants for exercising their right of appeal, or for securing their rights to be charged according to the bind-over order. Rather, we simply conclude that this time lapse was justified and cannot be charged against State for the speedy trial calculation.

Second, Defendants certainly cannot complain of the time lapse due to the stipulated extension. By agreeing to the extension, they failed to assert their right to a speedy trial from January until July 1982.

Third, Defendants allege that the *nolle prosequis* were not filed in good faith, and that the dismissals were sought only to gain a tactical advantage. Citing *United States v. Lara,* 520 F.2d 460 (D.C.Cir.1975), Defendants allege that delay caused by tactical maneuvering requires that the time between filing to dismiss and the grand jury indictment must be counted for purposes of Rule 37. However, *Lara* is distinguishable from the instant case. In *Lara,* the prosecution moved to dismiss charges against defendants in the District of Columbia for violating the narcotics laws. Subsequently, an indictment alleging sub-

stantially the same charges was obtained in the Southern District of Florida. The court found that the tactic was employed because the prosecution believed Florida would be more sympathetic to its case. A nineteen-month delay resulted. The speedy trial guarantee was violated because the court found the delay to be unconscionable and unjustified.

■ Here, however, the maneuvering was not done to get a tactical advantage. The bind-over order required a charge of second degree murder or less. The State, since July 1981, maintained that first degree murder was the appropriate charge. It is generally easier to prove second degree than first because the former is a lesser included offense. NMSA 1978, § 30–2–1(B) (Cum.Supp.1983). The *nolle prosequis* were necessary so State could prosecute for what it long maintained as the appropriate crime. This was not bad faith. For good cause, State may terminate and reinstitute a criminal prosecution. *See State ex rel. Delgado v. Stanley,* 83 N.M. 626, 495 P.2d 1073 (1972).

■ The speedy trial guarantee is to prevent lengthy incarceration prior to trial, to reduce impaired liberty while an accused is released on bail, and to shorten the disruption of life caused by pending and unresolved criminal charges. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Accordingly, once charges are dropped in good faith, the delay is not scrutinized by the speedy trial clause of the Sixth Amendment of the federal constitution. *Id.* at 7, 102 S.Ct. at 1501. During the interval between dismissal and the first degree murder indictment, Defendants were not in custody. The bonds were discharged and Defendants were released without prejudice. The time period from May 26 to August 27, 1981 is not attributable to State as delay, denying a speedy trial. Although trial took place eighteen months after Defendants' arrest, we find no violation of the right to a speedy trial.

■ Defendants argue that the trial court erred in failing to give State's requested instruction on second degree murder as a lesser included offense. When State submitted the instruction, counsel for Defendants objected. By objecting, Defendants have waived any error that might have occurred. As we stated in *State v. Trujillo,* 27 N.M. 594, 603, 203 P. 846, 849 (1921), with regard to submitting jury instructions for the court, "It will be available error only in case the court fails to agree with [defendant's trial] counsel as to the proper scope of the instructions." *See also State v. Najar,* 94 N.M. 193, 196, 608 P.2d 169, 172 (Ct.App.1980). Here, the trial court concurred with Defendants' position; it did not "fail to agree." They cannot now complain that it was reversible error. *Cf. State v. Doe,* 672 P.2d 654 (1983) (failure to instruct on general criminal intent was not jurisdictional error requiring automatic reversal, where respondent did not tender such instruction or object to not giving the instruction); and *State v. Garcia,* 46 N.M. 302, 128 P.2d 459 (1942) (defendant acquiesced in the trial court's instructions and could not claim initially on appeal that such instructions were improper).

Burdick separately disputes an alleged prosecutorial failure to rebut his own witness's statement which tended to exculpate defendants, while McCrary contends the trial court erroneously precluded cross-examination into Sutton's juvenile adjudication and that it erred in refusing admission of a police report. We find these other issues raised by Defendants to be without merit.

For the reasons given, the trial court and jury conviction of first degree murder is affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., and RIORDAN and STOWERS, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.

SOSA, Senior Justice, dissenting.

I respectfully dissent from the majority opinion only as to its discussion regarding the trial court's failure to instruct on second degree murder. I believe the failure to give the instruction here deprived Defendants of a fair trial.

As the majority opinion rightly indicates, second degree murder requires objective knowledge on the part of a defendant that a person will be killed or seriously harmed. First degree murder on the other hand requires a subjective knowledge that death or serious injury will result. These two tests differ substantially and required precise instructions to guide the jury in determining which particular degree of homicide Defendants may have committed. The majority acknowledges the evidence was conflicting as to whether Defendants McCrary and Burdick were subjectively aware that their behavior would create a strong probability of death or great bodily harm. This is supported by the fact that the magistrate in the bind over order originally found probable cause only for second degree murder. In addition the prosecution itself requested an instruction on second degree murder, thereby indicating its view that the evidence would support such a conviction. Finally, the trial judge indicated that based on the evidence, he would have convicted on second degree murder. There was thus a clear factual issue whether Defendants had subjective or objective awareness of the danger of their acts.

Defendants were entitled to have the jury consider this factual question. Absent a second degree murder instruction, there is simply no guarantee that the jury ever considered whether Defendants acted with the objective knowledge that death or serious injury would result, as required by second degree murder, or whether they acted with an actual subjective awareness as required by first degree murder. Commentary to the Uniform Jury Instructions on second degree murder indicates that an instruction on second degree murder should not be given where the evidence only supports first degree murder. NMSA

1978, UJI Crim. 2.11 (Repl.Pamp.1982), Committee Commentary. The evidence in this case did not exclusively support first degree murder. Failure to give a second degree murder instruction deprived Defendants' jury of an instruction on a lesser included offense of the offense charged, NMSA 1978, Section 30-2-1B (Cum.Supp. 1983), as well as an instruction clearly warranted by the evidence presented. This deprived Defendants of their right to a fair trial and was fundamental error. See State v. Vallejos, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974).

State v. Najar, 94 N.M. 193, 608 P.2d 169 (Ct.App.1980) is the most recent authority directly relied upon by the majority for its conclusion that Defendants waived any error that occurred by objecting to the prosecution's tender of the instruction. The Najar court however, referred to the fundamental error doctrine by concluding that the conviction there would stand since no such error existed. The implication is clear: the presence of fundamental error is grounds for reversal. Fundamental error exists in the instant case.

In my view, because fundamental error is involved, there is abundant authority for fully considering the instruction issue notwithstanding any asserted waiver on Defendants' part. This Court clearly may consider errors not properly preserved for appeal where such errors deprive the accused of a fundamental right. State v. Ramirez, 98 N.M. 268, 648 P.2d 307 (1982); State v. Baca, 89 N.M. 204, 549 P.2d 282 (1976); State v. Vallejos; NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983).

The failure to instruct on second degree murder is inconsistent with State v. Doe, 672 P.2d 654 (1983), and State v. Jackson, 672 P.2d 660 (1983). Together these cases stand for the proposition that fundamental error may lie for failure to properly instruct the jury on the necessary elements of an offense presented by the evidence. Jackson reversed a murder conviction and remanded for a new trial since the second degree murder instruction given did not

contain the necessary elements of that offense not covered in other instructions. In *Doe* the defendant's failure to tender an instruction on general criminal intent or to object to the failure to give the instruction was held not reversible error. However, the holding was based not only on the failure to object but on the conclusion that the instructions adequately addressed the necessary elements of the crime at hand.

The instant case is not simply one wherein the instruction given differed from the required instruction in some important respects. Here, despite the request for an instruction on the lesser included offense of second degree murder, it was altogether omitted. Defendants may well be guilty of first degree murder or they may be guilty of second degree murder. Whether they acted with a subjective awareness or an objective knowledge that death or serious injury would result was a question of fact that should have been submitted to the jury under proper instruction. It was not. The defendant in *Jackson* presumably will have his jury properly instructed on retrial. The defendant in *Doe* had her jury properly instructed. The Defendants here did not. Under the circumstances, the failure to instruct deprived Defendants of a fair trial.

Defendants' objection to the instruction, viewed by the majority as a waiver, should be immaterial in light of the fact that the prosecution itself requested it. In the federal courts, the long established rule is that an instruction on a lesser included offense must be given where the evidence would permit a jury to rationally find a defendant guilty only of that lesser offense. *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *Sansone v. United States*, 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 842, 40 L.Ed.2d 980 (1896). Some states have held that reversible error exists in homicide cases where a trial court does not *sua sponte* give a lesser included offense instruction warranted by the evidence. *See, e.g., State v. Thomas*, 112 Ariz. 261, 540 P.2d 1242 (1975); *State v. Taylor*, 112 Ariz. 68, 537

P.2d 938 (1975), *cert. denied*, 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976); *State v. Jones*, 220 Kan. 136, 551 P.2d 801 (1976). Michigan limits this rule to first degree murder cases since second degree murder is a lesser included offense and since there are significant differences in sanctions between first and second degree murder. *People v. Jenkins*, 395 Mich. 440, 236 N.W.2d 503 (1975). The court in *Jenkins* concluded that the trial judge is required to give a lesser included offense instruction warranted by the evidence even over objection. *Id.* While I believe this latter rule to be a sound one, the majority need not go this far to reach a just result in this case.

In first degree murder cases, where either the prosecution or the defense requests a second degree murder instruction warranted by the evidence, it should be given where failure to do so would result in fundamental error. This limited rule would assure murder trials wherein juries are given complete instructions warranted by the evidence. It would also render less likely the possibility that a jury, deprived of proper instruction on a lesser included offense, might convict on a greater offense whose sanction far exceeds what a particular defendant deserves. This approach would make it more likely that culpable defendants will be convicted of precisely that degree of homicide of which they are guilty.

The majority result on the other hand essentially countenances a practice wherein the defense or the prosecution is allowed to take an all or nothing gamble that the jury will either convict on the greater offense of first degree murder or acquit. Under this practice, some defendants will suffer greater sanctions than they justly deserve while other culpable defendants will go free.

For these reasons, I would reverse and remand for a new trial wherein a second degree murder instruction should be given.