803 P.2d 234

**John B. WORK, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

No. 18626.

Supreme Court of New Mexico.

Sept. 6, 1990.

Rothstein, Bennett, Daly, Donatelli & Hughes, Martha A. Daly, Mark H. Donatelli, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

MONTGOMERY, Justice.

We granted certiorari to consider this case in connection with the then pending case of *Zurla v. State.* We recently decided *Zurla,* 109 N.M. 640, 789 P.2d 588 (1990), holding that in the circumstances of that criminal case the defendant's right to a speedy trial was violated. We now reach the same result in this case and take the opportunity it affords to explain one of the aspects of our decision in *Zurla:* the function of the presumption of prejudice arising from a finding that there has been a lengthy delay in bringing the defendant to trial.

### I.

Defendant John Work was arrested and charged in magistrate court on April 24, 1986 with criminal solicitation. On September 22, 1986, the magistrate dismissed the charge without prejudice, noting that "[t]his matter will be presented to the Santa Fe County Grand Jury." On December 17, 1987, defendant was indicted on four counts of criminal solicitation and one count of aggravated battery. Jury trial was scheduled for August 22, 1988. On July 11, 1988, defendant moved to dismiss the indictment on speedy trial grounds. After a hearing, the trial court granted the motion and dismissed the indictment with prejudice.

The state appealed to the court of appeals, which reversed the trial court and held that defendant was not denied his right to a speedy trial. The court of appeals ruled that, although there was a "presumptively prejudicial" delay preceding defendant's motion to dismiss the indictment, an independent balancing of the four factors described in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), led to the conclusion that defendant's right to a speedy trial was not violated. The principal basis for this conclusion was that defendant had not established prejudice from the delay, as contemplated by the fourth *Barker* factor. The court of appeals held that defendant had the "burden of proof" to show prejudice and that there was no such showing in this case. Thus, although the court found in favor of defendant on the first and third *Barker* factors (length of the delay and assertion of the right, respectively), it ruled for the state on the second and fourth factors (reasons for the delay and prejudice) and held that, on balance, defendant's speedy trial right was not violated.

### II.

*Length of the Delay.* The trial court, relying on *Kilpatrick v. State,* 103 N.M. 52, 702 P.2d 997 (1985), had analyzed the delay in this case as covering the entire time period from defendant's arrest on April 24, 1986, to the date of the hearing on the motion to dismiss the indictment, August 18, 1988. This was a period of twenty-eight months. The court of appeals held that it was error to include the period of preindictment delay following dismissal of the magistrate court charges because there were no charges pending against defendant during this time and he was not subject to any restraints on his liberty. Excluding the fifteen-month period between magistrate court dismissal and grand jury indictment, the court held that the remaining thirteen-month period was nevertheless sufficient to give rise to a presumption of prejudice which required an inquiry into the remaining three *Barker* factors.

We agree with the court of appeals that the delay between time of arrest and dismissal of the indictment, even excluding the fifteen months between dismissal of the magistrate charges and filing of the indictment, was sufficiently lengthy to give rise to a presumption of prejudice. *See United States v. Martinez,* 776 F.2d 1481, 1483 (10th Cir.1985) (only prejudice shown to trial court was "the presumption arising

out of the length of the delay itself."). Because of our holding on the other *Barker* factors, we find it unnecessary to review the court of appeals' holding with respect to the intervening fifteen-month period or the trial court's contrary holding; the delay was presumptively prejudicial in any event, and this first *Barker* factor should be weighed against the state.

■ *Reason for the Delay.* We note, as did the court of appeals, that several periods of delay before dismissal of the magistrate charges and following the indictment were attributable to defendant, and agree with the court of appeals that primary responsibility for these delays should not be weighed against the state. We thus find the reason for the delay to be neutral or, as the court of appeals implicitly held, somewhat in favor of the state. Although we recognize that if the preindictment period were considered this factor would weigh strongly against the state, as the trial court found, we do not consider it further since any such holding would only strengthen our determination that the trial court reached the right result.

■ *Assertion of the Right.* The court of appeals found that defendant had timely asserted his right to a speedy trial and weighed this factor in his favor. This was based on the fact that defendant had filed his speedy trial motion on July 11, 1988, about seven months after the indictment and about five weeks before trial was scheduled to begin. We agree with the court of appeals' analysis on this factor.

### III.

■ *Prejudice to the Defendant.* The point over which we disagree with the court of appeals is its analysis of the issue of prejudice to the defendant. The court held that "the presumption of prejudice due to a lengthy delay is merely a 'triggering mechanism' that necessarily brings into play an inquiry of the other three *Barker* factors" and that the presumption does not

carry forward into the analysis of the fourth factor. Relying on *State v. Tartaglia,* 108 N.M. 411, 773 P.2d 356 (Ct.App.), *cert. denied,* 108 N.M. 318, 772 P.2d 352 (1989), the court held that the defendant had the burden of proving that the delay prejudiced him; the court held that he failed to meet this burden. Defendant argues that, upon a finding of presumptively prejudicial delay, the burden shifts to the state to establish lack of prejudice.

In *Zurla* we held that:

Once the defendant has demonstrated presumptively prejudicial delay and thus triggered the *Barker v. Wingo* analysis, the presumption of prejudice does not disappear. Rather, the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated. To the extent it suggests the state does not have this burden, *Tartaglia* is overruled.

*Zurla v. State,* 109 N.M. at 646, 789 P.2d at 594.

Here there was a presumption that defendant had been prejudiced by the delay. This, as the court of appeals held, is not by itself sufficient to resolve the separate factor of prejudice. However, contrary to the court of appeals' rulings in *Tartaglia,* in *Zurla,* and in this case, the presumption of prejudice does not simply vanish once the court proceeds to analyze the other *Barker* factors; it "carries forward" and serves to shift to the state the burden to demonstrate that, on balance, the defendant's speedy trial right has not been violated.

■ As the Supreme Court held in *Barker,* the state can discharge this burden in a variety of ways. It can show that one or more of the following circumstances exist: [1] There were good reasons for the delay; the defendant did not timely assert his right and acquiesced in the delay; or the defendant was not actually prejudiced by the delay. The Supreme Court made it clear that none of these factors is either a necessary or a sufficient condition to a finding

---

1. As indicated in *Barker,* this list is not all-inclusive; other circumstances excusing the delay or militating against a finding that the defendant's right to a speedy trial has not been violated are possible.

that there has been a deprivation of the right to a speedy trial; none of them has any "talismanic quality," and each can be assigned different significance or different weight in the "difficult and sensitive balancing process" that must take place in deciding whether the right has been violated. *See Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. Because no factor is indispensable to a finding of violation and because each must be evaluated on a spectrum of significance, it is a mistake to think that a simple finding of, for example, "prejudice" or "no prejudice" will suffice to resolve the issue and can be made merely by assigning the "burden of proof" to one party or the other. *See Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

■ On the question of prejudice, the delay may be so lengthy that the presumption of prejudice becomes well-nigh conclusive and proof of actual prejudice is unnecessary. *See United States v. Avalos,* 541 F.2d 1100, 1116 (5th Cir.1976) (where first three *Barker* factors weigh heavily in favor of accused, accused need demonstrate no prejudice at all; prejudice becomes totally irrelevant), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). In another case, the presumption standing by itself may be entitled to very little or no weight. *See Zurla,* 109 N.M. at 646, 789 P.2d at 594; *State v. Holtslander,* 102 Idaho 306, 313, 629 P.2d 702, 709 (1981) (where defendant does not attempt to show actual prejudice, presumption of prejudice should be given very little, if any, weight). Either party may offer evidence on the issue, defendant to corroborate the presumption and the state to rebut it by showing an absence of prejudice. If neither party comes forward with facts, the "probability of prejudice" (*see Dickey v. Florida,* 398 U.S. 30, 56, 90 S.Ct. 1564, 1578, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring))[2] will remain just that—a probability; but it may have greater or lesser significance in the

balancing process depending on the length of the delay and the weights assigned to the other factors.

■ In this case the state did not attempt to rebut the presumption of prejudice. Defendant, on the other hand, reinforced it by showing that his defense was potentially impaired through weakness of a witness's memory and the witness's consequent inability to corroborate defendant's version of the events surrounding the alleged offense. Defendant also demonstrated that the state's consideration of first degree murder charges against him caused him humiliation and embarrassment and affected his reputation in Santa Fe. Although the court of appeals found that these latter circumstances (under the rubric "anxiety and concern of the accused") did not entail stress exceeding that attending most criminal prosecutions, the existence of such anxiety and concern is nonetheless a subfactor to be considered in the analysis. We conclude that this factor, prejudice to the defendant, weighs in his favor.

## IV.

Summarizing, we find that the reason for the delay, if the period between dismissal of the magistrate charges and indictment by the grand jury is excluded from the analysis, weighs slightly in favor of the state. The other three factors—lengthy delay, assertion of the right, and actual prejudice to the defendant—weigh in defendant's favor. The strength of these latter factors is not overwhelming, but on balance we conclude that the trial court reached the correct result[3]—that the defendant's right to a speedy trial had been violated, and that the state had not carried its burden of persuasion to show that the lengthy delay should be excused.

The court of appeals is reversed, and the cause is remanded to the trial court with

---

2. "In essence ... there is little difference between [Justice Brennan's] approach [in *Dickey* ] and the one we adopt today." *Barker v. Wingo,* 407 U.S. at 530 n. 30, 92 S.Ct. at 2192 n. 30.

3. *See State v. Holtslander,* 102 Idaho at 309 n. 2, 629 P.2d at 705 n. 2: "It should be noted that each of the *Barker* factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight."

instructions to dismiss the indictment with prejudice.

IT IS SO ORDERED.

SOSA, C.J., concurs.

RANSOM, J., concurs specially.

BACA and WILSON, JJ., dissent.

RANSOM, Justice (specially concurring).

I agree with the principles of the continuing presumption of prejudice, weight, balancing, and burdens as relied upon in the opinion announced by the Court today. However, in this case of greater than average complexity I find the presumption of prejudice entitled to little weight when consideration is limited to the thirteen-month delay consisting of five months during which charges were pending in the magistrate court and eight months following the indictment. In balancing other factors, I note the allegation of anxiety and concern over the possibility of being indicted on murder charges refers on its face to the fifteen-month preindictment period. Moreover, much of the alleged memory loss on the part of the witness also may have occurred during this period of time. To the extent that the prejudice alleged does not relate unambiguously to the period of delay considered by the majority, it does little to shift the balance in petitioner's favor. *Cf. Zurla v. State*, 109 N.M. 640, 647–48, 789 P.2d 588, 595–96 (1990) (minimal prejudice established when record did not show the relationship between the inordinate delay in bringing defendant to trial and the allegation that two exculpatory witnesses could no longer be located).

There exists, however, ample authority that formal dismissal of charges for tactical reasons does not stop the running of the speedy trial right. *See United States v. Lara*, 520 F.2d 460 (D.C.Cir.1975) (when dismissal of indictment in District of Columbia and reindictment in Florida were attributable to governmental forum shopping, interim during which no charges were pending counted under speedy trial analysis); *State v. McCrary*, 100 N.M. 671, 675 P.2d 120 (1984) (*Lara* rule not applied when

*nolle prosequi* had been entered in good faith in order to allow the prosecution of more serious charges); *see also United States v. Avalos*, 541 F.2d 1100, 1111–13 (5th Cir.1976) (four-month period between government dismissal of arrest warrants and indictment before a different district court that was attributable to government's desire to find a prosecutor who was willing to present testimony of particular witness was tactical delay and weighed heavily against the government); *United States v. Thomas*, 527 F.Supp. 261 (1981) (period following formal dismissal of charges because of governmental forum shopping counted under speedy trial analysis). *See generally United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (speedy trial clause has no application after government, acting in good faith, formally drops charges); *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (arrest constitutes a condition initiating running of speedy trial right). *But see United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (fact that government's desire to prosecute defendants was public knowledge did not affect defendants' liberty interests and thus was not sufficient under *MacDonald* to allow consideration of the time during which court's dismissal of the indictment was appealed and no charges were pending against defendants).

The *Lara* line of cases recognizes that when a bad faith, tactical dismissal has been shown: (1) substance rules over form, and the speedy trial analysis includes this period of time even though no formal charges were pending; and (2) the delay caused by the government's tactics weighs heavily in favor of defendant. Although it might be argued from the Court's focus on the defendants' liberty interests in *Loud Hawk* that it is irrelevant whether charges are dismissed in good faith or in bad faith, I note that there was no issue in *Loud Hawk* of a bad faith dismissal. Moreover, the interests protected by the speedy trial right include more than just the defendant's liberty interest. *See United States*

*v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) (sixth amendment intended to minimize interference with defendant's liberty and to avoid disruption of employment, curtailment of associations, subjection to obloquy, and creation of anxiety in defendant as well as in defendant's family and friends). These other interests are implicated directly by bad faith dismissals. Therefore, unless and until advised differently by the Supreme Court, I would recognize the *Lara* exception as an aspect of federal constitutional jurisprudence.

Citing *United States v. Pino,* 708 F.2d 523 (10th Cir.1983) (bad faith not shown under due process analysis when government delayed prosecution of defendant to await outcome of stronger case against third party), the court of appeals analogizes the fifteen-month preindictment delay in this case to "investigative delay." *Cf. Johnson v. United States,* 434 A.2d 415 (D.C.Cir.1981) (good faith dismissal to investigate case not counted in speedy trial analysis). I disagree with the court of appeals' characterization. Here, the reason given for the state's dismissal of the original charges in April 1986 was to procure the testimony of Gloria Bustos without jeopardizing its prosecution of her case. However, delay cannot be excused by reasons unconnected with the case itself. *See Zurla,* 109 N.M. at 648, 789 P.2d at 596. Moreover, *Avalos* held that dismissal motivated by the government's desire to obtain the testimony of a particular witness constituted tactical delay, did not stop the running of defendant's speedy trial right, and weighed heavily against the state. 541 F.2d at 1111–13; *see also Redd v. Sowders,* 809 F.2d 1266 (6th Cir.1987) (delay in prosecution caused by desire to obtain testimony of co-defendant without jeopardizing its case against the latter because of his fifth amendment privilege against self-incrimination constituted advantage seeking delay under speedy trial analysis).

Additionally, the trial court noted in its findings that the state offered no explanation at all for a five-month delay between resolution of the charges against Bustos and petitioner's indictment in December 1987, and that this "casts doubt on the State's entire explanation." Being generous to the state, one might accept that it dismissed charges against petitioner solely in order to allow prosecution of its case against Bustos without having to present her testimony against petitioner.[1] One similarly might infer that the state simply was negligent in delaying petitioner's indictment after the charges against Bustos had been resolved. The fact remains that the *dismissal* was for tactical reasons.

I conclude that the fifteen-month period of time between dismissal of the metropolitan court charges and indictment in district court should be counted for speedy trial purposes as well as the thirteen-month period following indictment. In total then, the length of the delay is twenty-eight months. The presumption of prejudice as applied to the record becomes considerably stronger and weighs heavily against the state. Moreover, when the delay caused by tactical reasons is considered in conjunction with the reasons for the delay after reindictment, the "reasons for delay" factor weighs substantially in favor of petitioner, rather than slightly in favor of the state. Therefore, I conclude that the delay deprived petitioner of his right to a speedy trial guaranteed by the sixth amendment.

Finally, it is important to view in context the citation to *Holtslander* for the proposition that a trial court's determination of speedy trial claims is due some deference. *State v. Grissom,* 106 N.M. 555, 561, 746 P.2d 661, 667 (Ct.App.), *cert. denied,* 106 N.M. 439, 744 P.2d 912 (1987), held that, "[o]n appeal, a reviewing court is required to independently balance the factors considered by the trial court * * *." Although it is entirely reasonable to defer to the trial court's findings of fact, we should not defer to his judgment of the constitu-

---

**1.** The question can be posed, however, as to why the state sought *dismissal* of the metropolitan court charges rather than a *continuance.* Whatever the prosecutor's motives, preventing the running of the six-month rule is one consequence that attended the dismissal. *See* SCRA 1986, 5–604.

tional significance of those facts. *See Lara*, 520 F.2d at 464–65 (substantial basis existed for trial court's finding that government dismissal was attributable to forum shopping, and this delay held on appeal to be unnecessary and unconscionable); *Aguilar v. State*, 106 N.M. 798, 799, 751 P.2d 178, 179 (1988) (in analyzing coerced confession claims, duty of appellate court is to make independent determination of the ultimate question of voluntariness based on totality of circumstances).

WILSON, Justice, dissenting.

My application of the first *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) factor to the facts in this case precludes my concurrence in the majority opinion.

*Length of the Delay*

I disagree with the majority's determination that the delay in this case was presumptively prejudicial. While I agree with the majority (excepting Justice Ransom's special concurrence) that the fifteen-month period between the magistrate court dismissal and the grand jury indictment should not be considered, I do not believe that the remaining thirteen-month period was sufficiently lengthy to give rise to a presumption of prejudice triggering an inquiry into the speedy trial factors of *Barker*.

The majority and Justice Ransom's special concurrence treat the total thirteen-month period as one continuous delay. However, actually two proceedings developed. The first period of five months began with the defendant's arrest on April 24, 1986, and resulted in the magistrate court's dismissal of the charges without prejudice on September 22, 1986. The second period of eight months began with the defendant's grand jury indictment on December 17, 1987, and resulted in another dismissal on August 18, 1988, following the defendant's assertion of his speedy trial rights.

The proposition that the thirteen-month delay should be viewed in its sequence of two proceedings, consisting of five and eight months respectively, is consistent with this court's holdings in similar cases. In *New Mexico ex rel. Delgado v. Stanley*, 83 N.M. 626, 495 P.2d 1073 (1972) this court held that the speedy trial clock, interrupted by a nolle prosequi filing, started again with a subsequent indictment. *See also State v. McCrary*, 100 N.M. 671, 675 P.2d 120 (1984); *State v. Grissom*, 106 N.M. 555, 746 P.2d 661 (Ct.App.1987).

Moreover, practical demands of the judicial process necessitate some flexibility in this case in light of the state's obligation to retry the case from beginning to end. This is not to say that the five-month delay initiated by the first filing should be discounted. But in cases such as this where the state justifiably dismissed the original charges, it should be given a reasonable period of time to bring the second action to a conclusion.

The record of this case lacks any suggestion that the state acted with bad motive or deliberate delay. I take exception to Justice Ransom's special concurrence which criticizes the state for dismissing the first action for tactical reasons or for reasons "unconnected" to this case. The state dismissed the charges against the defendant in order to complete a prosecution against a codefendant and to secure testimony against the defendant. In dismissing a case which could not be substantiated by compelling evidence and in attempting to prepare the most persuasive case before bringing the defendant to trial, the state should not be condemned, but on the contrary, should be commended.

The Supreme Court stated in *Barker*: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. As I believe the thirteen-month period in this case was not presumptively prejudicial, at this point my analysis should rest. However, I take this opportunity to comment on the remaining three *Barker* factors and their relevancy in this case.

### Reason for the Delay

I agree with the majority that the reason for the delay in this case should weigh somewhat in favor of the state.

### Assertion of the Right

The majority in this case agrees with the court of appeals's analysis that the defendant's assertion of his right to a speedy trial was timely. I respectfully disagree.

The defendant in this case not only failed to assert his right to a speedy trial in a timely manner, but substantially contributed to the delay of both the first and second proceedings. The defendant twice waived the time limits for preliminary hearings and on three occasions obtained additional time in which to file pretrial motions while he sought a writ of superintending control from this court. The defendant should not be allowed to complain of a delay that he has in part caused himself. *See State v. Tarango*, 105 N.M. 592, 734 P.2d 1275 (Ct. App.), *cert. denied*, 105 N.M. 521, 734 P.2d 761 (1987), *overruled on other grounds*, *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990). *See also United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (even in limited class of cases where pretrial appeal is appropriate, delays from such appeal ordinarily will not weigh in favor of a defendant's speedy trial claim; a defendant who resorts to pretrial appeal normally should not be able to return to the trial court and reap the reward of dismissal for failure to receive a speedy trial).

If the requirement of assertion has any validity, it is to put the state on notice that the defendant does not acquiesce to the delay and that the state must go forward in all due haste with his prosecution. The defendant's complaint of delay, filed approximately five weeks prior to the scheduled trial, was not calculated to put the state on notice that the defendant wanted a speedy trial in time for the state to react effectively. Instead, the defendant lay behind the log for as long as possible and then brought his demand for a speedy trial at a time when he had finally eliminated any possible recourse from the appellate courts and when the state was helpless to respond. This case is a classic example of the type of defense trial tactics described in *Barker*. The Court noted: "[T]he record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Barker*, 407 U.S. at 535, 92 S.Ct. at 2194. As in the *Barker* case, the defendant in this case did not seek a speedy trial, but to the contrary, attempted to escape the consequences of a trial altogether.

### Prejudice to the Defendant

The majority states that once a presumption of prejudice is shown, such presumption "carries forward" and shifts the burden of persuasion to the state. In its analysis the majority relies upon *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990). It is my opinion that *Zurla* misapplied *Barker;* I consequently cannot agree with the majority's conclusion in this case that the defendant was actually prejudiced.

*Zurla*, having determined that the length of the delay was presumptively prejudicial, proceeded to analyze the remaining three *Barker* factors. In its discussion of the fourth factor, prejudice to the defendant, the court stated: "Once the defendant has demonstrated presumptively prejudicial delay and thus triggered the *Barker v. Wingo* analysis, the presumption of prejudice does not disappear. Rather, the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Zurla*, 109 N.M. at 646, 789 P.2d at 594. The court continued: "[N]either has the state shown how the evidence controverts the 'presumption of prejudice' as applied to the loss of this testimony, which, as noted above, was facially material to Zurla's defense." *Zurla*, 109 N.M. at 648, 789 P.2d at 596. *Zurla* erroneously "carried forward" or superimposed the presumption of prejudice onto the fourth factor of prejudice to the defendant.

*Barker* provides a functional balancing test with which to determine whether a

defendant's right to a speedy trial has been violated. *Barker* lends no support for the majority's proposition that the presumption of prejudice initially found to exist, the factor which triggers the further inquiry into the remaining three *Barker* factors, "carries forward" and attaches to the fourth factor. To the contrary, in balancing the factors within the factual context of the *Barker* case, the Supreme Court illustrated how to evenhandedly weigh each piece of evidence without a compelling presumption tipping the scales one way or another. *See also United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (employing *Barker* test, Supreme Court held possibility of prejudice not sufficient to weigh fourth factor in defendant's favor).

Additionally, practical and rational constraints foreclose the success of the majority's theory. If we require the state to affirmatively disprove prejudice to a defendant in a case where the defendant has not attempted to show the same, we are placing the burden upon the state to positively prove a negative. As stated in *State v. Tartaglia*, 108 N.M. 411, 415, 773 P.2d 356, 360 (Ct.App.), *cert. denied*, 108 N.M. 318, 772 P.2d 352 (1989), *overruled, Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990):

> Second, it is difficult to conceive of how the state could come forward and effectively rebut a presumption of prejudice from time lapse alone without knowing, at the least, how defendant claims he was prejudiced. For example, how could the state rebut a claim that a potential exculpatory witness has disappeared, causing prejudice to the defense, when the state may be unaware of the existence of such a person? How could the state rebut claims of anxiety and concern without some claim made by defendant that he, in fact, suffered such consequences from the delay? To state the proposition that the state must affirmatively rebut prejudice without knowing what prejudice defendant claims shows the impossibility of adopting defendant's position.

How can the state be expected to shadowbox its way through such an undefinable maze? The state should not be required to affirmatively prove that the defendant did not suffer prejudice by the delay. *See United States v. Martinez*, 776 F.2d 1481 (10th Cir.1985) (when defendant failed to articulate any specific harm suffered as a consequence of prosecutorial delay, and when only prejudice shown was presumption arising out of length of delay itself, defendant's speedy trial right not violated).

In my view, the better rule is to hold that the question of actual prejudice is a factor which must be determined on balance. If a defendant brings forth evidence of prejudice, the state will have the burden of rebutting such evidence. If no evidence of prejudice is offered, then the scales are balanced. In this latter situation the question of actual prejudice would be neither for nor against either party, but neutral.

In the present case the defendant contended that he suffered humiliation, embarrassment, anxiety, and concern. He further claimed that one witness could not remember a specific conversation which allegedly occurred between the defendant and that witness. However, the defendant was unable to remember how much of the conversation the witness heard, and the witness did not testify regarding his alleged memory loss. Speculative allegations of an impaired defense and uncorroborated, general assertions of memory deterioration are unpersuasive and are subject to careful scrutiny as to their impact on a particular case when a defendant offers no proof regarding how the witness, if present, would testify. *See United States v. Jenkins*, 701 F.2d 850 (10th Cir.1983); *State v. Grissom*, 106 N.M. 555, 746 P.2d 661 (Ct.App.1987).

I believe the evidence of actual prejudice introduced by the defendant in this case failed to show that the defendant's anxiety and concern exceeded that ordinarily attendant to criminal prosecutions. Further, the evidence did not demonstrate that the defense witness's testimony would have been different without the delay or that, if the testimony had been available, it would have been material to the defendant's defense. But for the heavy thumb of pre-

**154**

sumption which the majority placed on the scales, the defendant's claim of prejudice would fail.

*Summation*

Excepting the period of time between the magistrate court's dismissal of the charges and the grand jury indictment, and considering the time necessary to complete two judicial proceedings, I do not think the length of the delay was presumptively prejudicial. However, assuming the delay was determined to be sufficiently lengthy to give rise to a presumption of prejudice, I believe the second *Barker* factor (reason for the delay) should weigh somewhat in favor of the state, the third factor (assertion of the right) should weigh in favor of the state, and the fourth factor (prejudice to the defendant) should remain neutral. Balancing these four factors thus, I conclude that the defendant was not denied a speedy trial under the *Barker* announcements. I would remand this matter to the trial court with instructions to reinstate the case for trial.

BACA, J., concurs.